BEULAH B. CANFIELD AND GERTRUDE T. BROWNING v. MAURICE BROWNING AND GEORGE G. BROWNING.

GEORGE G. BROWNING, ADMINISTRATOR OF ABRAHAM BROWNING, v. MAURICE BROWNING.

Argued February —, 1903—Decided June 8, 1903.

1. The plaintiff in a junior judgment, by suing out execution and levying upon land, acquires priority over an older judgment upon which execution is subsequently issued.

2. An insufficient levy cannot be fortified or perfected by a levy made after the return of the execution.

3. A description in the levy made by which the land intended to be levied upon can be fully distinguished and identified is sufficient.

On rule to show cause.

Before Justices VAN SYCKEL and GARRETSON.

For the rule, *David J. Pancoast.*

*Contra, Edward A. Armstrong.*

The opinion of the court was delivered by

VAN SYCKEL, J. The two above-stated judgments were recovered in May, 1902.

In 1900 George Browning recovered a judgment against Maurice and George G. Browning, and in 1901 he recovered a judgment against Maurice Browning.

George Browning is not a party to either of the judgments recovered in May, 1902.

Executions were issued upon all these judgments and placed in the hands of the sheriff of Camden county. The executions in favor of George Browning were issued to the sheriff prior to the issuing of the executions on the later judgments.

After the sheriff received the George Browning writs, and before the return day thereof, he levied upon the real property of the defendants by the following description:

### "MAURICE BROWNING.

"428 and 432 Market street, Camden. Stable rear of Middleton's property. Farm at corner of Browning road and Marlton turnpike. Mill property at Cooper's creek and Pine street.

### "GEORGE G. BROWNING.

"Mill property Cooper's creek and Pine.
"Property S. E. Cor. 2d and Market.
"Property 125 and 127 Market street.
"Property Market, below Front.
"Farm Cooper's creek and Kaighn's Ave.
"Stable property, Front below Market."

After the return day of the executions he attached to the writs a more full and precise description of the several parcels of real estate levied upon and advertised them for sale by these particular descriptions under all four of the executions in his hands.

Thereupon the plaintiffs in the subsequent judgments obtained a rule to show cause why the levy made under the executions issued on the earlier judgments should not be set aside.

Waiving the objection that George Browning is not properly made a party to this proceeding by the form of the rule to show cause, the merits of the controversy will be considered.

It must be conceded that the plaintiff in a junior judgment, by suing out and levying the first execution upon land, acquired the prior lien, and, also, that an insufficient levy cannot be fortified or perfected by a levy made after the return day of the execution. *Kemble* v. *Harris,* 7 *Vroom* 526; *Wills* v. *McKinney,* 12 *Id.* 120; *Bogert* v. *Lydecker,* 16 *Id.* 314; *Clement* v. *Kaighn,* 2 *McCart.* 47.

The only question is whether the description of the property in the levy made by the sheriff before the return day of the writs was sufficiently specific to identify the lands and fasten the lien of the executions upon them.

In *Wills* v. *McKinney, supra,* the Supreme Court said: "The rule for determining the meaning of a levy made on lands under execution, and returned in writing with the writ, is not different from that which is applied in the construction of other instruments in writing. Any description sufficient to fix the bounds of the land is sufficient, or where it can be fully identified and distinguished by the terms used; and it may refer for a proper description to the deed of the debtor's grantor, or to a recorded will; or in any other way where there is sufficient given from the whole description to ascertain or identify the premises, but extrinsic evidence will not be admissible to show what land was intended to be levied on."

By the exclusion of extrinsic evidence the court intended such evidence as might be produced to show that the sheriff intended to levy on more land or other land than that which was covered by the description in the levy as returned.

That it was not intended to exclude all parol evidence appears by the case of *Chappell* v. *Hunt,* 8 *Gray* 427, which was cited with approval.

In that case the Massachusetts Supreme Court said: "In many cases the location of land could be determined accurately without naming the town in which it was situated. If, for example, it was described as being bounded by a particular pond or stream of water, its location would be readily ascertained. The name of the town would not fix its identity more precisely. Nor can we say, as a matter of law, that the description in the appraisers' certificate of the premises on which the levy was made is so defective and uncertain as to render it invalid. This is a question of fact to be settled by a jury. If a lot of land could be proved to exist in the county containing the exact quantity, and with boundaries, courses, distances and monuments exactly corresponding with those named and set out in the appraisers' certificate, it would make out a case of very strong identity, sufficient to sustain the levy; or if the description was found very nearly to resemble an actually existing lot or parcel of land, it would probably be adequate proof of identity to satisfy a jury."

In my judgment, the description is sufficiently accurate if a person guided by it could go to the property and identify it.

This rule should be applied to determine whether the several levies, or any of them, are sufficiently descriptive of the property to sustain them.

The correct practice will be to let the several properties be sold separately under all the executions attempted to be levied upon them, and upon the payment of the proceeds of sale into court the rights of the execution creditors will be settled. The parties should have leave to take further testimony to show whether, from the levies as made, the properties levied upon, or any of them, can be sufficiently identified.